Rivas v Seward Park Hous. Corp. (2023 NY Slip Op 04415)

Rivas v Seward Park Hous. Corp.

2023 NY Slip Op 04415

Decided on August 24, 2023

Appellate Division, First Department

Higgitt, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 24, 2023
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels
Anil C. Singh Peter H. Moulton Saliann Scarpulla John R. Higgitt

Index No. 151607/16 Appeal No. 322 Case No. 2022-05374 

[*1]William Rivas, Plaintiff Appellant,
v
Seward Park Housing Corporation et al., Defendants-Respondents, Seward Park Consumers Cooperative, Inc., Defendant.

Plaintiff appeals from an order of the Supreme Court, New York County (Richard Latin, J.), entered on or about November 7, 2022, which, to the extent appealed from as limited by the briefs, denied plaintiff's motion for summary judgment on the issue of liability on his Labor Law § 240 (1) claim and granted the cross-motion of defendants Seward Park Housing Corporation and Onsite Construction Enterprises, Inc., for summary judgment dismissing the Labor Law § 240 (1) claim.

Hogan & Cassell, LLP, Jericho (Michael Cassell of counsel), for appellant.
Smith Mazure, P.C., New York (Joel M. Simon of counsel), for respondents.

Higgitt, J. 

This appeal requires us to determine whether the cave-in of the below-grade excavation at issue here presented an elevation-related hazard within the contemplation of Labor Law § 240(1). For the reasons that follow, we find in the affirmative.
In January 2015, a significant leak occurred on real property located at 413 Grand Street in Manhattan. The owner of the premises, defendant Seward Park Housing Corporation, on the recommendation of defendant Fred Smith Plumbing and Heating Company, hired defendant Onsite Construction Enterprises, an excavation company, to perform an exploratory excavation to ascertain whether the leak was emanating from the building's external water pipes. Defendant Onsite, in turn, subcontracted the excavation work to nonparty Cisney Site Works, Inc., which employed plaintiff as a laborer.
The excavation was performed by a team of laborers who dug a trench by hand using shovels. Excavated dirt was removed from the trench and placed in a pile at the top of one of the earthen walls. The depth and length of the trench increased as work on it progressed.
On the third day of the dig, plaintiff and his colleagues reached the water pipes, which plaintiff testified were approximately 12 feet below ground. The dimensions of the trench in the area where plaintiff was digging were such that only one worker could occupy that area. Plaintiff was instructed to dig around the pipes to expose them. As plaintiff kneeled to perform that work, leaking water from one or both of the pipes poured into the trench, covering plaintiff's work boots. Plaintiff estimated that, at that point, the trench was 12-feet deep, 9 ½-feet long, and 3-feet wide. Suddenly, the right wall of the trench caved in, burying plaintiff.[FN1] Plaintiff's coworkers were able to dig out his head, allowing him to breathe. Emergency services personnel responded to the scene and extricated plaintiff from the collapsed trench. Plaintiff testified that shoring was not employed to secure the trench walls.
Defendant Onsite's foreman (Erdman) for the excavation work testified, in pertinent part, that plywood shoring was employed along the walls of the trench once it was four-feet deep. The shoring consisted of a plywood panel on each side wall of the trench held in place by cross-braces constructed of lengths of 4 x 4 wood; no panels were [*2]placed on the front or back portions of the trench. The shoring would be moved forward as work on the trench progressed. The foreman was in his van on the accident site when the incident occurred. He was informed by a worker on the site (Staszyn) that the incident occurred when the plywood shoring collapsed. According to the foreman, the trench was approximately six and a half-feet deep at the time of the cave-in, and, when he arrived at the trench in the immediate wake of the incident, the dirt was approximately one-and-a-half feet above plaintiff's head.
Plaintiff commenced this action to recover damages against defendants, asserting, as relevant here, a cause of action under Labor Law § 240 (1). Following the completion of discovery, plaintiff moved for partial summary judgment on, among other things, the issue of liability under Labor Law § 240 (1). Plaintiff relied on the deposition testimony of the various witnesses, and the affidavit of an engineering expert who opined that the use of a trench box or similar equipment would have prevented the cave-in and that the makeshift shoring was inadequate to protect plaintiff from the elevation-related hazards posed by the trench.
Defendants Seward Park and Onsite cross-moved for summary judgment dismissing the Labor Law § 240 (1) claim on the grounds that the statute did not apply to a trench cave-in, and that plaintiff was the sole proximate cause of his accident. The cross-moving defendants submitted the affidavits of Staszyn and Erdman in support of their sole-proximate-cause defense that plaintiff was instructed to but declined to employ additional shoring in the trench.[FN2]
As is relevant to this appeal, Supreme Court denied that aspect of plaintiff's motion seeking summary judgment on his Labor Law § 240 (1) claim, granted the cross-motion of defendants Seward and Onsite, and dismissed the Labor Law § 240 (1) claim. The court, citing to several Appellate Division decisions from the Second, Third and Fourth Departments, determined that the cave-in of an excavation does not present an elevation-related hazard within the contemplation of the statute (see O'Connell v Consolidated Edison of N.Y., 276 AD2d 608 [2d Dept 2000]; Pinheiro v Montrose Improvement Dist., 224 AD2d 777 [3d Dept 1996]; Hamann v City of New York, 219 AD2d 583 [2d Dept 1995]; Rogers v County of Niagara, 209 AD2d 1034 [4th Dept 1994]).
Plaintiff contends that Supreme Court should have granted him summary judgment on his Labor Law § 240 (1) claim and denied defendant Seward and Onsite's cross-motion because, in the wake of the Court of Appeals decisions in Runner v New York Stock Exch., Inc. (13 NY3d 599 [2009]) and Wilinski v 334 E. 92nd Hous. Dev. Fund Corp. (18 NY3d 1 [2011]), the Appellate Division decisions upon which Supreme Court relied were no longer good law. Plaintiff argues that, under Wilinski and Runner, where the base of an object that strikes a worker is at the same level as the worker, liability under [*3]Labor Law § 240 (1) attaches if there was an elevation difference between the top of the object and the height of the worker, and the worker was not properly protected from a falling object that required securing. Plaintiff highlights that the base of the earthen wall that collapsed was at the same level as he was, that there was a significant elevation difference between the top of the wall and the kneeling plaintiff, and that the wall collapsed due to the force of gravity and the absence of a protective device.
Defendants Seward and Onsite contend that Supreme Court's order should be affirmed because Wilinski and Runner did not change the law under Labor Law § 240 (1) as it relates to trench cave-ins, and a cave-in is a general construction site hazard, rather than an elevation-related danger under the statute. Defendants Seward and Onsite also contend that plaintiff's injury was not the direct result of the failure to provide a safety device of the type enumerated in Labor Law § 240 (1). Defendants Seward and Onsite do not press their sole-proximate-cause defense on appeal.
Under Labor Law § 240 (1), owners and contractors engaged "in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure," except certain owners of one- and two-family dwellings, must "furnish or erect . . . scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person" employed in the performance of the labor. The statute protects workers and imposes the responsibility for safety practices on those best situated to bear that responsibility (Nicometi v Vineyards of Fredonia, LLC, 25 NY3d 90, 96 [2015]), and therefore the statute should be given a liberal construction (see Saint v Syracuse Supply Co., 25 NY3d 117, 124 [2015]). The statute "imposes absolute liability where the failure to provide [proper] protection is a proximate cause of a worker's injury" (Nicometi v Vineyards of Fredonia, LLC, 25 NY3d at 96, quoting Fabrizi v 1095 Ave. of the Ams., L.L.C., 22 NY3d 658, 662 [2014]).
"Whether a plaintiff is entitled to recovery under Labor Law § 240 (1) requires a determination of whether the injury sustained is the type of elevation-related hazard to which the statute applies" (Wilinski v 334 E. 92nd Hous. Dev. Fund Corp., 18 NY3d at 7). "[T]he single decisive question [in this connection] is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (Runner v New York Stock Exch., Inc., 13 NY3d at 603). This single decisive question "center[s] around a core premise: that a defendant's failure to provide workers with adequate protection from reasonably preventable, gravity-related accidents will result in liability" (Wilinski v 334 E. 92nd Hous. Dev. Fund Corp., 18 [*4]NY3d at 7). Additionally, in a "falling object" case, the plaintiff must establish that, at the time the object fell, it was being hoisted or secured, or required securing for the purposes of the undertaking (Fabrizi v 1095 Ave. of the Ams., L.L.C., 22 NY3d at 662-663).
Here, plaintiff's injuries were the direct consequence of defendants Seward and Onsite's failure to provide adequate protection against a risk arising from a physically significant elevation differential. Viewing the evidence in the light most favorable to those defendants, the trench was approximately six and a half-feet deep at the time of the incident. Plaintiff is five-and-a-half feet tall and was kneeling at the moment of the right wall's collapse. There was, therefore, well over a one-foot height differential between the top of the earthen wall and the top of plaintiff's head. That height differential cannot be characterized as de minimis in light of the extent of that differential, the amount of dirt that poured into the trench when the right wall collapsed suddenly, and the amount of force the dirt was capable of generating (see Runner v New York Stock Exch., Inc., 13 NY3d at 605). Moreover, the earthen wall, which required securing for the purposes of the undertaking, collapsed because of the effects of gravity, and the makeshift shoring plainly failed to provide adequate protection against the risk arising from the physically significant elevation differential. The harm to plaintiff flowed directly from the application of the force of gravity to the earthen wall; plaintiff's injury is directly attributable to the risk posed by the physically-significant elevation differential (see Runner v New York Stock Exch., 13 NY3d at 604-605).
Contrary to defendants Seward and Onsite's contention, the trench cave-in cannot be characterized as an ordinary construction site danger. Of course, "the protections of Labor Law § 240 (1) do not encompass any and all perils that may be connected in some tangential way with the effects of gravity" (Nicometi v Vineyards of Fredonia, LLC, 25 NY3d at 97 [internal quotation marks omitted]). But protective equipment enumerated in or contemplated by the statute was designed to avert the type of falling object hazard encountered by plaintiff. Braces (specifically enumerated in Labor Law § 240 [1]) for the temporary earthen wall (cf. Misseritti v Mark IV Constr. Co., 86 NY2d 487, 491 [1995] ["braces" referred to in statute are "those used to support elevated work sites not braces designed to shore up or lend support to a completed structure"] [emphasis added]) or other shoring (other devices of the kind enumerated in Labor Law § 240 [1]), are designed to prevent the cave-in of a trench (see generally Encarnacion v 3361 Third Ave. Hous. Dev. Fund Corp., 176 AD3d 627, 628 [1st Dept 2019]; Gonzalez v Paramount Group, Inc., 157 AD3d 427, 428 [1st Dept 2018]; Ortega v City of New York, 95 AD3d 125, 128-129 [1st Dept 2012]). Manifestly, plaintiff's injuries [*5]were the direct consequence of an elevation-related risk, i.e., the cave-in of a temporary trench presenting a physically-significant elevation differential, not a separate hazard wholly unrelated to the hazard that brought about the need for the Labor Law § 240 (1) device in the first instance.
We note that the particular wall of the trench that collapsed was not slated for further excavation; plaintiff and his coworkers were focused on expanding the "front" wall of the trench and making the trench deeper to expose the pipes. Therefore, securing the side walls of the trench would not have been contrary to the objectives of the planned work (see Wilinski v 334 E. 92nd Hous. Dev. Fund Corp., 18 NY3d at 11; see also Salazar v Novalex Contr. Corp., 18 NY3d 134, 140 [2011]). To the contrary, adequately shoring the side walls would have facilitated the excavation work by preventing unwanted dirt from entering the trench  simultaneously, it would have protected plaintiff from the clear cave-in hazard presented by the work.
Based on the record before us, we conclude that defendants Seward and Onsite failed to provide plaintiff with adequate protection from a reasonably preventable, gravity-related accident, and that they are liable under Labor Law § 240 (1) as a matter of law.[FN3] Accordingly, that aspect of plaintiff's motion seeking summary judgment on his Labor Law § 240 (1) claim should have been granted, and defendants Seward and Onsite's cross-motion should have been denied.
Accordingly, the order of the Supreme Court, New York County (Richard Latin, J.), entered on or about November 7, 2022, which, to the extent appealed from as limited by the briefs, denied plaintiff's motion for summary judgment on the issue of liability on his Labor Law § 240 (1) claim and granted the cross-motion of defendants Seward Park Housing Corporation and Onsite Construction Enterprises, Inc., for summary judgment dismissing the Labor Law § 240 (1) claim, should be reversed, on the law, without costs, the motion granted, and the cross-motion denied.
Order Supreme Court, New York County (Richard Latin, J.), entered on or about November 7, 2022, which, to the extent appealed from as limited by the briefs, denied plaintiffs' motion for summary judgment on the issue of liability on his Labor Law § 240 (1) claim, and granted the cross-motion of defendants Seward Park Housing Corporation and Onsite Construction Enterprises, Inc., for summary Judgment dismissing the labor Law § 240 (1) claim, reversed, on the law, without costs, the motion granted, and the cross-motion denied.
Opinion by Higgitt, J. All concur.
Manzanet-Daniels, J.P., Singh, Moulton, Scarpulla, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 24, 2023

Footnotes

Footnote 1: An accident report prepared by defendant Seward recording statements of several of its employees who were on the accident scene reflected that plaintiff "was fully submerged in dirt caused by the collapsing of one of the walls [of the trench]." A security report prepared by defendant Seward contained a similar statement. Defendants Seward and Onsite do not challenge the admissibility of the reports.

Footnote 2: With respect to the dimensions of the trench, Staszyn averred that it was 8-feet deep, 4-feet wide, and 10-feet long at the time the incident occurred.

Footnote 3: Given the absence of any direct authority from our Court, Supreme Court was bound to follow the on-point precedent from our sister departments (see Mountain View Coach Lines v Storms, 102 AD2d 663, 664-665 [2d Dept 1984]). We, however, are not so bound (id. at 665). We decline to follow the Appellate Division authority identified by Supreme Court, all of which pre-dates Runner and Wilinski, to the extent that it is inconsistent with Court of Appeals law.